IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFRED GRAYSON,

        Petitioner,                  No. CIV S-03-1694 MCE KJM P

    vs.

TOM CAREY,

        Respondent.            <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner, a state prisoner proceeding pro se, filed a petition on August 12, 2003, relying on 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody.  The petition challenges his convictions for murder in the first degree and assault with a deadly weapon. Petitioner raises six grounds in support of his application for habeas relief:  first, that the trial court's jury instructions improperly limited the jury's consideration of evidence that petitioner was a battered spouse; second, that the trial court abused its discretion and committed reversible error when it refused to issue petitioner's proffered jury instruction regarding the burden of proof for showing the crime occurred during the "heat of passion"; third, that the trial court erred in admitting certain statements into evidence despite petitioner's hearsay objection; fourth, that the trial court committed reversible error when it admitted certain photographs into evidence over petitioner's objection that prejudice outweighed relevance; fifth, that the trial court's jury

1

1  instructions misinformed jurors regarding the proper roles and powers of both judge and jury;

2  and finally, that the court erred in allowing the prosecution to refer to itself as "the People."

3  I.  Factual and Procedural Background

4  _____The parties do not take issue with the state Court of Appeal's recitation of the

5  facts of this case:

> Defendant and the victim had a volatile marriage. Over the 20 plus years of their relationship, arguments and physical altercations were common. The police had been called to their residence on many occasions and, at the time of this incident, defendant was on probation for threatening the victim with a knife.
>
> June 1996 was marked by many arguments between defendant and the victim. On June 16, 1996, Father's Day, the couple quarreled because the victim wanted defendant to mow the lawn. When defendant received a telephone call from another woman, things came to a head, and an argument ensued. The victim grabbed a knife and, when defendant stood up, the victim ran out of the house. Defendant followed.
>
> Defendant stabbed the victim several times. When the victim's son tried to intervene, defendant stabbed him as well. The victim ran away, but fell down. Defendant leaned over her and stabbed her repeatedly, killing her. The victim suffered 32 stab wounds to her body, including at least 14 wounds to major organs and defensive wounds on her legs and hands. There were several eyewitnesses to this savage attack, some of whom described seeing defendant go back into the house to get another knife after the victim grabbed the first knife away from defendant. Three knives were found at the scene.
>
> At trial, defendant admitted killing his wife but asserted he acted without premeditation or malice, and instead had simply "lost it" as a result of the day's events. The prosecution introduced evidence that defendant had previously threatened to kill the victim, and emphasized inconsistencies between defendant's trial testimony and statements he had made to investigators.

Answer, Ex. B at 2-3.

/////

1   Judgment was entered against petitioner in the Superior Court of Sacramento

2   County, Case No. 96F04725, on September 3, 1999. With enhancement for weapons use,

3   petitioner was sentenced to a term of 26-years-to-life. The California Court of Appeal, Third

4   Appellate District, affirmed petitioner's conviction and sentence on September 27, 2002. The

5   California Supreme Court denied review on December 11, 2002.

6   II.  Standards Under The AEDPA

7   An application for a writ of habeas corpus by a person in custody under a

8   judgment of a state court can be granted only for violations of the Constitution or laws of the

9   United States. 28 U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any

10  claim decided on the merits in state court proceedings unless the state court's adjudication of the

11  claim:

12  (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established federal law, as
13  determined by the Supreme Court of the United States; or

14  (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
15  State court proceeding.

16   28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro,

17  365 F.3d 755, 773-75 (9th Cir. 2004) (affirmation of lower court's grant of habeas relief under 28

18  U.S.C. § 2254 after determining petitioner was in custody in violation of his Eighth Amendment

19  rights and § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71

20  (2003) (relief precluded under § 2254(d) and therefore did not address the merits of petitioner's

21  Eighth Amendment claim).[1]  Courts are not required to address the merits of a particular claim,

22

23       [1]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
    held in a § 2254 action that "any independent opinions we offer on the merits of constitutional
24  claims will have no determinative effect in the case before us . . .  At best, it is constitutional
    dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain
25  relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title
    28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation
26  of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71;
    Ramirez, 365 F.3d at 773-75.

but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000), in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision

was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III.  The Battered Spouse Syndrome Instruction

At trial, petitioner presented testimony from Bruce Ebert, a clinical psychologist, who was permitted to testify as an "expert in forensic psychology."  RT 896.  Dr. Ebert evaluated petitioner as being dependent and passive, suffering from low self-esteem, unable to express his anger incrementally, and lacking psychological resources.  RT 908-910.  He testified that petitioner's personality fit the pattern of a battered spouse who allowed his anger to build and explode rather than releasing it in spurts.  RT 920.  In Dr. Ebert's view, petitioner was out of control on the evening of June 16, 1996.  RT 921.

On cross-examination, the prosecutor asked Dr. Ebert about battered spouse syndrome.  RT 929.  In Dr. Ebert's view, both petitioner and the victim, Carolyn Nunnery, suffered from battered spouse syndrome.  RT 931.

At the jury instruction conference, the judge wondered aloud why the battered spouse instruction was relevant.  RT 1030-1031.  The prosecutor suggested that the evidence was offered "by both sides to explain maybe different characteristics of the behavior both [sic] Miss Nunnery and Mr. Grayson."  RT 1031.  Defense counsel agreed that the instruction would assist the jury in evaluating petitioner's and Nunnery's reactions.  RT 1032.

/////

/////

/////

/////

1    The trial court read to the jury the following instruction:

2    You should consider this evidence for certain limited purposes
     only, and there are three three [sic] possible ways you may consider
3    it.

4    One, that the alleged victim or the defendant's reaction, as
     demonstrated by the evidence, are not inconsistent with him or her
5    having been physically and/or psychologically abused.

6    Or secondly, the belief, perception or behavior of victims of
     domestic violence. Or third, proof relevant to the believability of
7    the defendant's testimony.

8    RT at 1059.[2]

9    Petitioner argues that this instruction improperly limited the jury's consideration

10   of evidence regarding battered spouse syndrome and precluded the jury from weighing this

11   evidence when determining petitioner's mental state at the time of the killing. Respondent's

12   argument is threefold:  first, that the state appellate court properly found any error associated

13   with this instruction was invited by petitioner; second, that petitioner's expert gave "almost no

14   testimony" concerning battered spouse syndrome and therefore no prejudice could have resulted

15   even if the instruction was faulty; and finally, that the instruction given did not improperly limit

16   the jury's consideration of petitioner's mental state.

17        A.    Invited Error as a Procedural Bar

18        The Court of Appeal dismissed petitioner's argument regarding the battered

19   spouse instruction solely because "[t]he [trial] court gave the instruction precisely as defense

20   requested."  Answer, Ex. B at 16.  The court reasoned this rendered any error "invited" and

21   provided a basis for rejecting petitioner's argument without reaching the merits. Id. at 15-16; see

22   also RT 1047-1049 (defense counsel proposes the instruction actually given).  Accordingly, the

23   /////

24

25        [2] This instruction is nearly identical to the instruction regarding battered women's
     syndrome promulgated by California's Committee on Standard Jury Instructions. See CALJIC
26   No. 9.35.1.

1   Court of Appeal invoked the invited error doctrine as an independent procedural reason for

2   defeating petitioner's challenge to the battered spouse instruction.

3           Invited error constitutes a procedural bar to review by a habeas court.  See Leavitt

4   v. Arave, 383 F.3d 809, 832-33 (9th Cir. 2004) (stating "[t]here is no reason that we should treat

5   the invited error rule differently from other state procedural bars").  A federal court will not

6   review a claim of federal constitutional error raised by a state habeas petitioner if the state court's

7   determination of the same issue "rests on a state law ground that is independent of the federal

8   question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729

9   (1991).  However, the state bears the burden of raising procedural default as a defense or it loses

10  the right to assert the defense thereafter.  Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003).

11  In part, the state's burden is to demonstrate that the procedural rule has been regularly and

12  consistently applied.  Id. at 586.

13          Respondent has failed to meet his burden of raising procedural default.

14  Respondent does cite extensively to the state appellate court's ruling regarding invited error, but

15  does not discuss the California courts' treatment of the doctrine.  Accordingly the state has not

16  adequately raised the procedural bar and therefore has forfeited its right to assert this defense.

17  Bennett, 322 F.3d at 585.

18          B.      Minimal Evidence Precludes Prejudice

19          Respondent suggests that the paucity of evidence concerning battered spouse

20  syndrome requires a finding that petitioner was not prejudiced by the jury instruction, whatever

21  its form.  Answer at 9-10.

22          In the habeas context, an error is harmless unless it had a " 'substantial and

23  injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S.

24  619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750 (1946)).  Respondent has

25  cited nothing supporting his argument that the substantial and injurious effect necessary to

26  support a finding of prejudice must be based on quantity, rather than quality, of the evidence.

1    C.     The Merits of the Battered Spouse Instruction

2         A jury instruction violates due process if it fails to give effect to the requirement

3    that the state prove every element of the offense. Sandstrom v. Montana, 442 U.S. 510, 520-21

4    (1979). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises

5    to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). Rather,

6    the question is whether the "ailing instruction by itself so infected the entire trial that the

7    resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991). In making

8    this determination a single instruction "may not be judged in artificial isolation, but must be

9    viewed in the context of the overall charge." Boyde v. California, 494 U.S. 370, 378 (1990). If

10   the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that

11   the jury has applied the challenged instruction in a way that violates the Constitution. Id. at 380.

12        In California, battered spouse evidence is relevant to a determination of a

13   defendant's mental state.  People v. Humphrey, 13 Cal.4th 1073, 1088-89 (1996) (evidence of

14   battered woman's syndrome generally relevant to reasonableness and subjective existence of

15   defendant's belief in need to defend).  The instruction as given in this case did not preclude the

16   jury's using the evidence in this fashion.  Jurors were told they could consider such evidence in

17   determining the "belief, perception or behavior" of a battered person.  The term "belief" connotes

18   mental acceptance, while "perception" connotes awareness.  Oxford English Dictionary Online

19   <dictionary.oed.com, accessed 8/9/06>.  Even if the instruction was ambiguous, it nevertheless

20   provided sufficient guidance to the jury.  By using terms related to cognition, the instruction

21   alerted the jury to the application of the battered spouse evidence to a determination of

22   petitioner's mental state.

23   IV.  Refusal to Give Petitioner's Proffered Jury Instruction Regarding "Heat of Passion"

24        Petitioner argues that the trial court committed reversible error when it refused to

25   give his proffered jury instruction regarding heat of passion. Specifically, petitioner argues that

26   the instructions given did not adequately define the burden of proof relevant to heat of passion

1  and that charging the jury with petitioner's proffered instruction was necessary to clarify the

2  applicable law. Respondent argues that the jury was properly instructed.

3          The Court of Appeal rejected petitioner's argument, finding that "[t]he

4  instructions, viewed as a whole, correctly and completely outlined the prosecutor's burden of

5  proof."  Answer, Ex. B at 17-19.

6          Although there is no federal constitutional right to instructions on lesser included

7  offenses, if the lesser offense encompasses the theory of the defense, a defendant is entitled to

8  instructions on that theory, including the instructions on the appropriate burdens of proof.

9  Sanders v. Cotton, 398 F.3d 572, 582-83 (7th Cir. 2005) (burden and defense theory); Conde v.

10  Henry, 198 F.3d 734, 739 (9th Cir. 1999) (theory of the defense); Windham v. Merkle, 163 F.3d

11  1092, 1105-06 (9th Cir. 1998) (lesser included offenses).  A court need not use the exact

12  language proposed by defendant.  Conde, 198 F.3d at 739.  In examining the adequacy of the

13  instructions, a reviewing court must view the contested instructions in light of the overall charge.

14  Boyde, 494 U.S. at 378.

15          Petitioner proposed and the trial court refused an instruction that would have told

16  the jurors that if they had a reasonable doubt as to whether malice was negated by heat of

17  passion, they must find there was no malice.[3]  In rejecting the instruction, the trial court noted

18  that the substance of the instruction was "covered in at least one other instruction." CT 172.

19          The trial court's comment about one "other instruction" is borne out by a review

20  of the record.  The jurors were instructed with both CALJIC 8.50 ("Murder and Manslaughter

21  Distinguished") and CALJIC 8.72 ("Doubt Whether Murder or Manslaughter").  RT 1074-1075;

22

23          [3]  The proposed instruction reads:

24          If you have a reasonable doubt as to whether malice was negated
            by heat of passion resulting from sufficient provocation, you must
25          find that there was no malice.

26  CT 172.

9

1   CT 221, 226.  CALJIC 8.50 instructed the jury, in part, that "[t]o establish that a killing is murder

2   and not manslaughter, the burden is on the People to prove beyond a reasonable doubt . . . that

3   the act which caused the death was not done in a heat of passion or upon a sudden quarrel."

4   RT 1074; CT 221.  CALJIC 8.72 reinforced this statement of the People's burden with regard to

5   "heat of passion" by instructing the jury that

> If you are convinced beyond a reasonable doubt and you
> unanimously agree that the killing was unlawful but you
> unanimously agree that you have a reasonable doubt whether the
> murder or manslaughter [sic], you must give the defendant the
> benefit of the doubt and find it to be manslaughter rather than
> murder.

10   RT 1075; CT 226.  Finally, the court read the standard reasonable doubt instruction, which told

11   the jurors that the presumption of innocence "places upon the People the burden of proving

12   [defendant] guilty beyond a reasonable doubt."  RT 1066; CT 207.  As the Court of Appeal

13   observed, these instructions adequately conveyed the prosecution's burden of disproving

14   petitioner's heat of passion theory of the defense.

15   V.  <u>Admission of Statements into Evidence Despite Petitioner's Hearsay Objection</u>

16        Petitioner was charged with murder, assault with a deadly weapon on Nunnery's

17   son, Ricky Foster, and false imprisonment of Nunnery by menace, force, and violence on June

18   12, 1996, days before the murder.  CT 18-20.  When a police officer met Ms. Nunnery after her

19   911 call on June 12, Nunnery reported that petitioner had not allowed her to leave the house and

20   said "I got to kill you or I'll do three years."  RT 40.[4]  Counsel sought to exclude this as

21   irrelevant to the false imprisonment charge and problematic because he did not have the ability to

22   cross-examine Nunnery.  RT 40-41, 46-49.  The prosecutor argued the statement showed menace

23   to support the false imprisonment charge and was "the basis for Count Three [false

24

---

25        [4]  Petitioner was on probation for misdemeanor brandishing a knife during an argument,
     so the prosecutor believed there was no possibility that petitioner was facing a three year
26   sentence even if probation was revoked.  RT 51.

1   imprisonment]."  RT 41.

2        The court asked if the prosecutor sought to bring in the statement "as it may relate

3   to his state of mind . . .or his purpose three days later?"  RT 50.  The prosecutor agreed, noting

4   that part of petitioner's claim of provocation was that Nunnery continually threatened to have

5   him arrested for baseless charges.  RT 52.  The court ultimately concluded the evidence was

6   admissible, suggesting that it was limited to the false imprisonment charges:

7        I do want to reflect on it and go back and review 1370.[5]  But I'm

8   _____

9        [5] California Evidence Code section 1370 provides:

10       (a) Evidence of a statement by a declarant is not made inadmissible
         by the hearsay rule if all of the following conditions are met:

11       (1) The statement purports to narrate, describe, or explain the
         infliction or threat of physical injury upon the declarant.

12

13       (2) The declarant is unavailable as a witness pursuant to Section
         240.

14       (3) The statement was made at or near the time of the infliction or
         threat of physical injury. Evidence of statements made more than

15       five years before the filing of the current action or proceeding shall
         be inadmissible under this section.

16
         (4) The statement was made under circumstances that would
17       indicate its trustworthiness.

18       (5) The statement was made in writing, was electronically
         recorded, or made to a physician, nurse, paramedic, or to a law
19       enforcement official.

20       (b) For purposes of paragraph (4) of subdivision (a), circumstances
         relevant to the issue of trustworthiness include, but are not limited
21       to, the following:

22       (1) Whether the statement was made in contemplation of pending
         or anticipated litigation in which the declarant was interested.

23
         (2) Whether the declarant has a bias or motive for fabricating the
24       statement, and the extent of any bias or motive.

25                                    continued . . .

26

1   strongly inclined that it should not be excluded under 352[6] or under
    hearsay principles, since there is an exception to the hearsay rule
2   that allows the evidence.

3   And it seems to me it's a significant part of the statement, it's
    something she claims happened repeatedly, and it plays a role in
4   the false imprisonment, in the violation of personal liberty. So I
    just think it's too major an incision to try to cut that out, and in
5   effect we take away half of what she talks about. And it's a factor
    in how she accounts what she does, why she's afraid, why she runs
6   out.

7   RT 62.

8          Thereafter, retired police officer Donald Smith testified that, when still on active

9   duty, he responded to a 911 call for domestic violence on June 12, 1996, and interviewed

10  Nunnery, who reported petitioner had beaten her and threatened to kill her because he did not

11  want to go back to jail. RT 262. Nunnery told Officer Smith petitioner was on probation and

12  said he had to kill her so he would not have to go to jail for three years for violating probation.

13  RT 264-265.

14         The trial court did not instruct the jury at the time of Smith's testimony that the

15  testimony was limited to the false imprisonment count, either before or after Smith recounted

16  Nunnery's statements. RT 262-265. Moreover, although the court later instructed the jury that

17  "certain evidence" was admitted for a limited purpose, it did not identify the evidence so limited

18  or the purpose to which it was limited. RT 1059.

19  ─────────────────────

20  (3) Whether the statement is corroborated by evidence other than statements that
    are admissible only pursuant to this section.
21
22  (c) A statement is admissible pursuant to this section only if the
    proponent of the statement makes known to the adverse party the
23  intention to offer the statement and the particulars of the statement
    sufficiently in advance of the proceedings in order to provide the
24  adverse party with a fair opportunity to prepare to meet the
    statement.
25
       [6] California Evidence Code § 352 permits a court to exclude otherwise admissible
26  evidence if it is unfairly prejudicial.

1    The Court of Appeal rejected petitioner's claim of error based on the hearsay

2  admission:

3         On appeal, defendant contends the court should have excluded this
       threat. He asserts its admission violated the confrontation clause of
4       the state and federal Constitutions. He also challenges the
       reliability of the victim's statements.
5
        Defendant's claims have been waived. Initially, we note that
6       defendant's objections arose in a limited context, namely, the
       relationship of the threats to the false imprisonment charge.
7       However, defendant was in fact acquitted of that charge, and
       consequently any claim of error is moot. Defendant's failure to
8       object specifically to the admissibility of the statement as it related
       to the murder charge waives the matter on appeal.
9
        Moreover, although defendant asserted that Evidence Code section
10      1370 did not permit him to cross-examine the declarant, he did not
       object on the basis that this statute violated the confrontation
11      clause. Under similar circumstances, the California Supreme Court
       found an objection based on an inability to cross-examine
12      insufficiently specific to preserve appellate review of the
       constitutional claims.
13
        Even if we set aside the issue of waiver, defendant's assertion is
14      unavailing. In *People v. Hernandez* (1999) 71 Cal.App.4th 417,
       424, the appellate court concluded that Evidence Code section
15      1370 "is similar to the hearsay exception for spontaneous
       statements, which is firmly rooted," and "contains particular
16      guarantees of trustworthiness and adequate indicia of reliability...."
       Consequently, the court concluded, this statute does not violate the
17      confrontation clause. For the same reasons, we agree.

18      Defendant asserts that indicia of reliability were absent here,
       because the victim had a motive to make misrepresentations to
19      Officer Smith and was angry at the time she made her report.
       Again, however, defendant did not raise this claim in the trial
20      court. He is therefore precluded from doing so here.

21  Answer, Ex. B at 6-8 (citations omitted).

22    A. Procedural Default

23    Without argument, in conclusory fashion, respondent claims this "issue is not

24  properly before this Court" because petitioner's objection to the evidence covered only its use in

25  support of the false imprisonment charge and did not specifically rely on the Confrontation

26  Clause.  As noted above, however, the state bears the burden of raising procedural default as a

13

1   defense or it loses the right to assert the defense thereafter. <u>Bennett</u>, 322 F.3d at 585.  The state's

2   burden includes demonstrating that the procedural rule has been regularly and consistently

3   applied. <u>Id.</u> at 586.  In this case, respondent has made no effort to satisfy his burden on this

4   issue.  Answer at 14-21.  There is no bar to this court's consideration of petitioner's

5   Confrontation Clause claim.

6          B.   <u>The Confrontation Clause And Crawford v. Washington</u>

7               In <u>Crawford v. Washington</u>, 541 U.S. 36, 59 (2004), the Supreme Court held that

8   "[t]estimonial statements of witnesses absent from trial have been admitted only where the

9   declarant is unavailable, and only where the defendant has had a prior opportunity to cross-

10  examine."  The Court recognized that the Confrontation Clause does not bar the use of

11  testimonial statements "for purposes other than establishing the truth of the matter asserted," but

12  noted that when such statements are admitted for their truth, their admission should not be

13  controlled by "amorphous notions of 'reliability.'" <u>Id.</u> at 59-61 & n.9.  It thus rejected the

14  approach adopted in <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), which permitted the admission of an

15  unavailable witness's statement if it fell within a firmly rooted hearsay exception or bore

16  guarantees of trustworthiness, at least insofar as <u>Roberts</u> applied to "testimonial" statements.

17  <u>Crawford</u>, 541 U.S. at 61-62, 68.

18               <u>Crawford</u> was decided after the conclusion of petitioner's direct appeal in

19  December 2002.  Answer, Ex. C (California Supreme Court denial of review).  Generally, a new

20  rule of criminal procedure does not apply on collateral review.  <u>Teague v. Lane</u>, 489 U.S. 288,

21  310 (1989) (plurality opinion).  However, in <u>Bockting v. Bayer</u>, 399 F.3d 1010, 1019, <u>amended</u>

22  <u>on denial of rehearing</u>, 408 F.3d 1127 (9th Cir. 2005), <u>cert granted sub nom.</u> <u>Whorton v.</u>

23  <u>Bockting</u>, ___ U.S. ___, 126 S.Ct. 2017 (2006), the Ninth Circuit held <u>Crawford</u> should be applied

24  retroactively to cases on collateral review.  Accordingly, this court applies <u>Crawford</u> to an

25  analysis of the Confrontation Clause issue presented in this petition.

26  /////

14

1      Under Crawford, this court must determine whether the statement is hearsay –

2  admitted for the truth of the matter asserted -- and whether it is testimonial.  Crawford, 541 U.S.

3  at 59; United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004), cert. denied, 543 U.S. 1079

4  (2005); Cal. Evid. Code § 1200 (a) ("'Hearsay evidence' is evidence of a statement that was

5  made other than by a witness while testifying at the hearing and that is offered to prove the truth

6  of the matter stated.").

7      Smith's testimony may not have been hearsay in connection with the false

8  imprisonment charge, for the "threat or menace" that elevates misdemeanor false imprisonment

9  to a felony may be conveyed by "word or act."  People v. Reed, 78 Cal.App.4th 274, 280 (5th

10 Dist. 2000).  However, in connection with the murder charge, Smith's testimony–recounting

11 what Nunnery told him–, offered by the prosecutor to prove petitioner's state of mind several

12 days later, certainly was offered for the truth of what Nunnery and petitioner asserted.

13     The next determination is whether the hearsay was testimonial.  In Crawford, the

14 Supreme Court concluded:

15          We leave for another day any effort to spell out a comprehensive
            definition of "testimonial."  Whatever else the term covers, it
16          applies at a minimum to prior testimony at a preliminary hearing,
            before a grand jury, or at a former trial; and to police
17          interrogations.

18 Crawford, 541 U.S. at 68.  The Court explained:

19          We use the term "interrogation" in its colloquial, rather than any
            technical legal, sense.  Just as various definitions of "testimonial"
20          exist, one can imagine various definitions of "interrogation," and
            we need not select among them in this case.  [Petitioner's wife's]
21          recorded statement, knowingly given in response to structured
            police questioning, qualifies under any conceivable definition.
22

23 Id. at 53 n.4 (citation omitted).  The Court did provide further guidance on what might constitute

24 testimonial hearsay.  It surveyed the suggestions from petitioner and amicus and discussions in

25 case law and found the following "various formulations" share "a common nucleus" and then

26 /////

defined the coverage of the Confrontation Clause "at various levels of abstraction" around the common core:

> *ex parte* in-court testimony or its functional equivalent–that is,
> material such as affidavits, custodial examinations, prior testimony
> that the defendant was unable to cross-examine, or similar pretrial
> statements that declarants would reasonably expect to be used
> prosecutorially," . . . "extrajudicial statements . . .contained in
> formalized testimonial materials, such as affidavits, depositions,
> prior testimony, or confessions," . . . "statements that were made
> under circumstances which would lead an objective witness
> reasonably to believe that the statement would be available for use
> at a later trial.

Id. at 51-52.

      The Court returned to the question this past term in Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266 (2006), which was consolidated with the case of Hammon v. Indiana.  In those cases, the courts considered whether the tape of a 911 call used in Davis's trial, and the results of police questioning used against Hammon in trial, both for domestic abuse, were testimonial.  The Court summarized its holding:

> Without attempting to produce an exhaustive classification of all
> conceivable statements – or even all conceivable statements in
> response to police interrogation–as either testimonial or
> nontestimonal, it suffices to decide the present cases to hold as
> follows: Statements are nontestimonial when made in the course of
> police interrogation under circumstances objectively indicating that
> the primary purpose of the interrogation is to enable police
> assistance to meet an ongoing emergency.  They are testimonial
> when the circumstances objectively indicate that there is no such
> ongoing emergency, and that the primary purpose of the
> interrogation is to establish or prove past events potentially
> relevant to later criminal prosecution.

Id. at 2273-74.  The Court recognized that, in Hammon, police had asked Amy Hammon to fill out

/////

/////

/////

16

a written affidavit, but rejected the idea that this was determinative:

> [W]e do not think it conceivable that the protections of the Confrontation Clause can readily be evaded by having a note-taking policeman *recite* the unsworn hearsay testimony of the declarant, instead of having the declarant sign a deposition.

Id. at 2276 (emphasis in original).  The Court rejected the claim that the 911 call from Davis's girlfriend was testimonial, because she was speaking about events as they unfolded rather than narrating a past occurrence and because the questioning by the 911 operator was "necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past." Id. (emphasis in original).

> The Hammon statement, however, was on a different footing, for, as in <u>Crawford</u>:

> Both declarants were actively separated from the defendant . . . . Both statements deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed.  And both took place some time after the events described were over.  Such statements under official interrogation are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial.

Id. at 2278 (emphasis in original).

> In this case, Nunnery spoke to a police officer who responded to a 911 call for spousal abuse.  These circumstances would lead to a "reasonable expectation" that her statement might later be used at a trial and give rise to the conclusion that she intended "to bear testimony" against petitioner.  The statement was testimonial.  Nevertheless, this is not the end of the confrontation clause inquiry.

/////

/////

/////

/////

/////

1           During its discussion of the <u>Roberts</u> test of reliability, the Court in <u>Crawford</u>

2 noted:

3        The Roberts test allows a jury to hear evidence, untested by the
adversary process, based on a mere judicial determination of

4 reliability. It thus replaces the constitutionally prescribed method
of assessing reliability with a wholly foreign one. In this respect, it

5 is very different from exceptions to the Confrontation Clause that
make no claim to be a surrogate means of assessing reliability. For

6 example, the rule of forfeiture by wrongdoing (which we accept)
extinguishes confrontation claims on essentially equitable grounds;

7 it does not purport to be an alternative means of determining
reliability.

8

9 <u>Crawford</u>, 541 U.S. at 62.

10        The Court returned to this idea in <u>Davis</u>, concluding:

11        While defendants have no duty to assist the State in proving their
guilt, they *do* have the duty to refrain from acting in ways that

12 destroy the integrity of the criminal-trial system. . . . [O]ne who
obtains the absence of a witness by wrongdoing forfeits the

13 constitutional right to confrontation.

14 <u>Davis</u>, 126 S.Ct. at 2280 (emphasis in original).  Both courts relied on <u>Reynolds v.United States</u>,

15 98 U.S. 145, 158 (1878), where the Court observed:

16        The Constitution gives the accused the right to a trial at which he
should be confronted with the witnesses against him; but if a

17 witness is absent by his own wrongful procurement, he cannot
complain if competent evidence is admitted to supply the place of

18 that which he has kept away.  The Constitution does not guarantee
an accused person against the legitimate consequences of his own

19 wrongful acts.  It grants him the privilege of being confronted with
the witnesses against him; but if he voluntarily keeps the witnesses

20 away, he cannot insist on his privilege.  If, therefore, when absent
by his procurement, their evidence is supplied in some lawful way,

21 he is in no condition to assert that his constitutional rights have
been violated.

22

23        The Court added:

       The rule has its foundation in the maxim that no one shall be

24 permitted to take advantage of his own wrong; and, consequently,
if there has not been, in legal contemplation, a wrong committed,

25 the way has not been opened for the introduction of the testimony.

26 <u>Id</u>. at 159.  Once a court has found as a preliminary matter that a defendant was responsible for

1   the witness's absence, the <u>Reynolds</u> court recognized, there is no error in admitting the absent

2   witness's prior testimony or statement.

3         As one Court of Appeal found:

4         A prior statement given by a witness made unavailable by the
    wrongful conduct of a party is admissible against the party if the

5         statement would have been admissible had the witness testified.

6         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

7         The rule is . . . based on a principle of reciprocity similar to the
    equitable doctrine of "clean hands."  The law prefers live testimony

8         over hearsay, a preference designed to protect everyone,
    particularly the defendant.  A defendant cannot prefer the law's

9         preference and profit from it, as the Supreme Court said in
    Reynolds, while repudiating that preference by creating the

10        condition that prevents it.

11  <u>Steele v. Taylor</u>, 684 F.2d 1193, 1202 (6th Cir. 1982).

12        Although the Court of Appeal in the instant case did not rely on the doctrine of

13  forfeiture to find the statements admissible[7], its decision is not contrary to Supreme Court law.

14  There was no dispute at trial that petitioner killed Nunnery, so there was no dispute that he had

15  "voluntarily [kept] the witness away."  Moreover, at the time the state court rendered its decision,

16  the clearly established Supreme Court law held that the use of hearsay would not violate the

17  Confrontation Clause if the defendant was the cause of the witness's absence.  Accordingly, the

18  Court of Appeal's decision did not violate clearly established federal law.  <u>Early</u>, 537 U.S. at 8.

19  VI.  <u>Admission of Photographs</u>

20        Over defense objection, the court admitted an autopsy photograph of Nunnery's

21  torso, showing at least twenty stab wounds.  Although the trial court conceded that the

22  photograph was "disturbing," it found it "not that prejudicial and it is highly probative."  RT 598-

23  599.

24  /////

25

26      [7]  There is a similar forfeiture principle contained in California Evidence Code § 1350.

19

1    The Court of Appeal rejected petitioner's claim of error:

2    The photograph of the victim's torso was relevant evidence. It
     corroborated testimony of expert and lay witnesses and provided a
3    visual image of what had occurred. The number of stab wounds
     visible in the photograph demonstrated the violence of the attack
4    and was probative of defendant's mental state at the time of the
     killing. The fact that other evidence existed to establish these facts
5    does not mean the photograph was irrelevant.

6    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

7    Defendant also errs in asserting that the photograph should have
     been excluded as cumulative and "disturbing" under Evidence
8    Code section 352.

9    The admission of a photograph that is asserted to be unduly
     inflammatory is a matter left to the trial court's discretion, and its
10   decision will not be disturbed on appeal, unless the probative value
     of the photograph is clearly outweighed by its prejudicial effect.
11   "[A] court may admit even 'gruesome' photographs if the evidence
     is highly relevant to the issues raised by the facts, or if the
12   photograph would clarify the testimony of a medical examiner."

13   Here, the photograph corroborated the testimony of the pathologist
     and eyewitnesses to the stabbing, and should not have been
14   excluded as cumulative. . . .

15   Answer, Ex. B at 10-11 (citations omitted).

16          Whether the admission of evidence raises a federal question depends on whether

17   its impact is so prejudicial as to violate a defendant's right to a fundamentally fair trial. Estelle v.

18   McGuire, 502 U.S. 62, 70 (1991).  "The fact that evidence admitted as relevant by a court is

19   shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its

20   reception a violation of due process."  Lisenba v. California, 314 U.S. 219, 228-29 (1941).

21          Petitioner has not provided a copy of the challenged photograph; this court thus is

22   unable to determine the prejudicial nature of its impact, if any.  Petitioner has not borne his

23   burden of showing prejudicial unfairness.  Austad v. Risley, 761 F.2d 1348, 1353 (9th Cir. 1985)

24   (en banc).

25   /////

26   /////

VII.  Instructions Regarding Juror Conduct During Deliberations

Petitioner argues that the trial court "committed a serious error" and violated petitioner's due process rights by instructing the jury in the language of CALJIC No. 17.41.1, which invites the jury to report any of its members who refuses to deliberate.  CT 249.

Since the filing of the instant petition, the Ninth Circuit has ruled on an issue essentially identical to that presented by petitioner. In Brewer v. Hall, 378 F.3d 952, 954 (9th Cir.), cert. denied, 543 U.S. 1037 (2004), the habeas petitioner alleged that use of CALJIC No. 17.41.1 violated his constitutional rights.  While expressing no view as to the constitutional merits of CALJIC 17.41.1, the Ninth Circuit held that the instruction could not be contrary to or an unreasonable application of clearly established Supreme Court precedent because no such precedent exists.  Brewer controls the resolution of this claim.

VIII.  The Prosecution's References to Itself as "the People"

Petitioner's final argument is that allowing the prosecution to refer to itself as "the People" created a structural defect in his trial, which eroded the system of checks and balances contained in the United States Constitution, violated petitioner's federal substantive due process rights, and deprived petitioner of his right to a trial by a jury of his peers.

Petitioner has not cited, nor has this court's research identified, any authority for the proposition that allowing the prosecution to refer to itself as "the People" is constitutionally infirm. In the absence of such authority, this court cannot find the state court ruling is somehow "contrary to" or an "unreasonable application" of that which does not exist.  Brewer, 378 F.3d at 955-56; Dows v. Wood, 211 F.3d 480, 485-86 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 9, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

2/gray1694.157